# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PURCELL BRONSON, et al.,

    Plaintiffs,

          v.

MARTIN F. HORN, et al.,

    Defendants.

CIVIL ACTION NO. 3:01-CV-0026

(JUDGE CAPUTO)

## **MEMORANDUM**

Before the Court is an action brought under 42 U.S.C. § 1983 and 37 PA. CODE § 93.11(b).  Plaintiffs are four inmates who were previously housed in the Long-Term Segregation Unit ("LTSU") at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh").  Defendants are employees of the Pennsylvania Department of Corrections ("DOC") at SCI-Pittsburgh and the central office of the DOC.  The case was tried before the Court without a jury on July 11, 2005.  The parties submitted proposed findings of fact and conclusions of law, and the matter is now ripe for disposition.

Plaintiffs Purcell Bronson, Derrick Warren, Nathaniel Owens, and Anthony Sutton initiated this civil action by filing a petition for review with the Commonwealth Court of Pennsylvania in which they challenged the legality of DOC Policy 6.5.1 ("Policy").  The Policy created the LTSU and its promulgation resulted in Plaintiffs' transfer to the LTSU.  Defendants Martin F. Horn, Joel Dickson, William Stickman, Rebecca Kessler, and various unnamed DOC officials removed the case to the United States District Court for the Middle District of Pennsylvania on January 9, 2001.  (Doc. 1.)  On August 24, 2001, Plaintiffs filed the Amended Complaint in which they asserted various federal and state

law claims relating to their confinement in the LTSU pursuant to the Policy. (Doc. 317.) Specifically, the Court has construed the Amended Complaint as seeking a declaration that the Policy infringes upon Plaintiffs' rights protected by the procedural component of the Due Process Clause and the Equal Protection Clause in violation of 42 U.S.C. § 1983. (Docs. 201 & 217.) In addition, the Amended Complaint seeks a declaration that the placement of Plaintiffs in the LTSU pursuant to the Policy violates 37 PA. CODE § 93.11(b). (Doc. 317 ¶ 5, 7, 10, 12.)

On March 6, 2003, the Court granted summary judgment in favor of Defendants with respect to Plaintiffs' claims premised on the Equal Protection Clause. (Doc. 201.) The Court also granted summary judgment in favor of Defendants with respect to Plaintiffs Owens and Sutton's claims premised on the procedural component of the Due Process Clause. (*Id.*) Thereafter, in a separate Memorandum, the Court granted summary judgment in favor of Defendants with respect to Plaintiffs' federal claims for money damages. (Doc. 217.) Thus, at the time of trial, the only remaining claims were: (1) Plaintiffs Bronson and Warren's request for a declaration that the Policy violates the procedural component of the Due Process Clause; and (2) Plaintiffs' claim that their placement in the LTSU pursuant to the Policy violates 37 PA. CODE § 93.11(b).

This case was tried without a jury before the Court on July 11, 2005. At trial, before testimony was taken, the Court dismissed Plaintiffs Bronson and Warren's claim which sought a declaration that the Policy did not accord them the process to which they were constitutionally entitled. The basis for the dismissal of this claim was that the DOC adopted Policy Number DC-ADM 802-2 ("Amendment"), which amended the Policy. The Amendment provides inmates selected for the LTSU notice of the selection, the reasons

2

therefor, an opportunity to be heard, and an opportunity to appeal.  (Ex. D-1.)  Thus, as a result of Plaintiff Bronson and Warren's transfer out of the LTSU, the issue of a lack of hearing was moot.  Moreover, because the Amendment provides adequate process, the issue of whether the Policy is constitutionally infirm is also moot.

The case was tried on the issue of whether or not there was a violation of 37 PA. CODE § 93.11(b), which states in pertinent part:

> Confinement in a restricted housing unit (RHU), other than under procedures established for inmate discipline, will not be done for punitive purposes.  The Department will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process . . . .

Plaintiffs claim that their placement in the LTSU pursuant to the Policy violates § 93.11(b) because:  (1) it authorizes the placement of Plaintiffs in the LTSU for punitive purposes; and (2) it fails to provide Plaintiffs with due process prior to their placement in the LTSU.

Turning first to Plaintiffs' claim that their placement in the LTSU pursuant to the Policy violates § 93.11(b) because it authorized the placement of Plaintiffs in the LTSU for punitive purposes, the Court finds that Plaintiffs were not placed in the LTSU for punitive purposes.  The evidence received at trial established that the DOC transferred each Plaintiff to the LTSU because of a need for increased physical control, not to punish Plaintiffs.  Consequently, the Court will enter judgment in favor of Defendants on this claim.

The Court next turns to Plaintiffs' argument that their placement in the LTSU pursuant to the Policy violates § 93.11(b) because it fails to provide Plaintiffs with due process prior to their placement in the LTSU.  The Court notes that this claim has both an

equitable and legal component. On the one hand, Plaintiffs have sought declaratory and injunctive relief. The Court finds that as with Plaintiff Bronson and Warren's federal claims seeking equitable relief, the promulgation of the Amendment renders this portion of Plaintiffs' state law claim moot. On the other hand, the Court has previously construed Plaintiffs' Amended Complaint as seeking money damages. (Doc. 217 at 4.) While the Court rejected Plaintiff Bronson and Warren's federal claim for money damages, it did not address Plaintiffs' state law claim for money damages. Consequently, because the promulgation of the Amendment does not moot this portion of Plaintiffs' state law claim, Plaintiffs' state law claim for money damages remain.

To establish a cause of action for a procedural due process violation, a plaintiff must establish that he was deprived of a protected property interest without due process. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1990). The Supreme Court has held that a protected liberty interest may be found where an inmate is transferred to a status of confinement which imposes an atypical and significant hardship upon the inmate in comparison with the ordinary incidents of prison life. *Wilkinson v. Austin*, --- U.S. ---, 125 S. Ct. 2384, 2394 (2005) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As noted in the Court's May 2, 2003, Memorandum, Plaintiff Bronson and Warrens' confinement in the LTSU imposes an atypical and significant hardship upon them due to both the length and severity of the conditions of their confinement in the LTSU. (Doc. 217 at 7.) The Court also finds that Plaintiffs Sutton and Owens were also subjected to an atypical and significant hardship due to the severity of the conditions of their confinement in the LTSU, despite the fact that they were confined in the LTSU for a shorter duration. Thus, Plaintiffs' confinement in the LTSU implicates

the Due Process Clause.

Turning next to the sufficiency of the process actually accorded to Plaintiffs, "[d]ue process, unlike some legal rules is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Indeed, the Supreme Court has recognized the necessity of a flexible due process standard and has called for courts to balance certain salient factors. Consequently, the Court must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value , if any, of additional or substantive procedural safeguards; and finally, the Government's interest . . . .

*Mathews v. Eldridge*, 424 U.S. 319, 355 (1976).

Addressing first Plaintiffs' private interests in avoiding erroneous placement in the LTSU, the Court recognizes the procedural protections to which inmates are entitled "are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 125 S. Ct. at 2395. Nonetheless, the Court must give that interest some weight in its analysis. Next, the Court finds that there is a high risk of erroneous placement in the LTSU due the lack of pre-deprivation procedures in place. Plaintiffs were given no notice of their transfers or the reasons for the transfer. Moreover, Plaintiffs were not afforded an opportunity to be heard except after they were actually placed in the LTSU. Finally, the Court finds that the DOC's interest of increasing the physical security of its employees and other inmates is a compelling one. However, providing Plaintiffs with

even a minimal amount of process would not interfere with this interest.  Therefore, the Court holds that the Policy prior to the promulgation of the Amendment was constitutionally infirm and violated § 93.11(b) by failing to afford Plaintiffs due process prior to their transfers to the LTSU.

Having determined that Plaintiffs have established a violation of § 93.11(b), the Court turns to the issue of damages.  Plaintiffs did not present any evidence of damages at trial.  However, because they have established a violation of § 93.11(b), the Court finds that they are entitled to at least nominal damages of one dollar each.

Finally, there is an additional issue that has been raised, namely, whether the Policy was properly adopted.  Plaintiffs argue that it was not properly promulgated under the Commonwealth Documents Law, 45 PA. CONS. STAT. ANN. §§ 1102-1602, and therefore the Policy is void.  The Court need not resolve this issue.  The Amended Complaint did not allege that the Policy violated the Commonwealth Documents Law; nor was there any argument or evidence presented at trial on this issue.  Plaintiff cannot attempt to add a claim at such a late date.

The Court's findings of fact and conclusions of law follow.

## FINDINGS OF FACT

1) At all times material hereto, Plaintiffs Purcell Bronson, Derrick Warren, Nathaniel Owens, and Anthony Sutton were confined in the LTSU, formerly located at SCI-Pittsburgh.

2) At all times material hereto, Defendant Martin F. Horn was the former Secretary of the Pennsylvania Department of Corrections.

3) The LTSU is a special housing unit designed to hold the most problematic and assaultive inmates within the Commonwealth Prison System.

4) Inmates selected for placement in the LTSU include those who have failed other rehabilitative programs, have displayed assaultive behavior and/or pose serious escape risks.

5) Inmates housed in the LTSU are subjected to severe restrictions on their privileges of property possession and physical movement in comparison to that of the general prison population.

6) Inmates in the LTSU were formerly divided into two levels, Level 1 and Level 2. Level 2 inmates were under the most restrictive level of confinement and had the least amount of privileges/programming. Level 2 inmates were allowed legal library services as well as receipt of legal and personal correspondence. In addition, they retained in their cell one box of legal and/or religious material. Level 2 inmates were not permitted to receive incoming general publications.

7) Level 1 inmates had increased programming and privileges. In addition to the privileges available to Level 2 inmates, they also received additional privileges, including the receipt of incoming general publications. The incoming publications were limited to five magazines, one daily newspaper and leisure books as determined by the Unit Management Team.

8) Plaintiff Bronson was confined in the LTSU at SCI-Pittsburgh from September 26, 2000, until the LTSU was transferred to the State Correctional Institution at Fayette (SCI-Fayette"). On June 23, 2004, Plaintiff

> Bronson was transferred from the LTSU at SCI-Fayette to the Special Management Unit ("SMU") located at the State Correctional Institution at Camp Hill ("SCI-Camp Hill").

9) Prior to his transfer to the LTSU, Plaintiff Bronson was confined in the Restricted Housing Unit ("RHU") at the State Correctional Institution at Dallas ("SCI-Dallas").

10) Plaintiff Bronson was placed in the LTSU for non-punitive administrative reasons.

11) Plaintiff Bronson was placed in the LTSU because he was unable to adjust to life in general population. He had displayed violent behavior on numerous occasions and posed a danger to DOC staff and other inmates.

12) Plaintiff Warren was confined in the LTSU at SCI-Pittsburgh from August 25, 2000, until he was transferred to the State Correctional Institution at Coal Township ("SCI-Coal Township").

13) Plaintiff Warren is presently confined in the RHU at SCI-Coal Township. Plaintiff Warren was transferred there on March 6, 2003. There is no LTSU at SCI-Coal Township.

14) Plaintiff Warren was placed in the LTSU for non-punitive administrative reasons.

15) Plaintiff Warren was placed in the LTSU due to his assaultive nature, violent threats and propensity for violence against staff and inmates.

16) Plaintiff Sutton was confined in the LTSU at SCI-Pittsburgh from August 7, 2000, until September 19, 2001, when he was transferred to SCI-Coal

Township.

17) Plaintiff Sutton was placed in the LTSU for non-punitive administrative reasons.

18) Plaintiff Sutton was placed in the LTSU because he had demonstrated a propensity for leading other inmates in disruptive behavior. In addition, Plaintiff Sutton had a history of involvement in drugs, gambling, extortion and other subversive activities.

19) Plaintiff Owens was confined in the LTSU at SCI-Pittsburgh from August 7, 2000, until September 19, 2001, when he was transferred to SCI-Coal Township.

20) Plaintiff Owens was placed in the LTSU for non-punitive administrative reasons.

21) Plaintiff Owens was placed in the LTSU because he posed a high escape risk and repeatedly displayed a propensity to engage in assaultive behavior.

22) The overarching goal of the LTSU is behavior modification, not punishment.

**CONCLUSIONS OF LAW**

1) The LTSU is a restricted housing unit within the meaning of 37 PA. CODE § 93.1.

2) The placement of Plaintiffs in the LTSU implicates the protections of the procedural component of the Due Process Clause because said transfer imposed upon Plaintiffs an atypical and significant hardship in comparison with the ordinary incidents of ordinary prison life. *Wilkinson v. Austin*, ---

U.S. ---, 125 S. Ct. 2384, 2394 (2005) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

3) The procedures in place prior to July 8, 2005, which had been established by the DOC regarding the assignment of inmates to LTSU did not comport with the tenets of procedural due process.

4) Defendants violated 37 PA. CODE § 93.11(b) by failing to provide Plaintiffs due process prior to assigning Plaintiffs to the LTSU pursuant to the Policy.

5) As of July 8, 2005, the procedures in place which have been established by the DOC regarding the assignment of inmates to the LTSU comport with the requirements of procedural due process.

6) Plaintiffs were not placed in the LTSU for punitive purposes.

7) Administrative custody is a status which permits DOC officials to maintain heightened physical control the needs for which vary from institution to institution and inmate to inmate.

8) Plaintiffs are entitled to nominal damages because they have established a violation of 37 PA. CODE § 93.11(b), but failed to present any evidence regarding compensatory damages.

An appropriate Order follows.

_____  /s/ A. Richard Caputo
Date             A. Richard Caputo
                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PURCELL BRONSON, et al.,

   Plaintiffs,

          v.                         CIVIL ACTION NO. 3:01-CV-0026

MARTIN F. HORN, et al.,         (JUDGE CAPUTO)

   Defendants.

## ORDER

**NOW**, this  16th  day of August, 2005, **IT IS HEREBY ORDERED** that:

(1) The Clerk of the Court shall enter **JUDGMENT in favor of Defendants** with respect to:

    (a) Plaintiffs Bronson and Warren's procedural due process claim; and

    (b) Plaintiffs' claim that their confinement in the Long-Term Segregation Unit at SCI-Pittsburgh pursuant to DOC Policy 6.5.1 was for punitive purposes in violation of 37 PA. CODE 93.11(b)

(2) The Clerk of the Court shall enter **JUDGMENT in favor of Plaintiffs** with respect to their claim that their confinement in the Long-Term Segregation Unit at SCI-Pittsburgh pursuant to DOC Policy 6.5.1 violated 37 PA. CODE 93.11(b) because Plaintiffs were not provided due process.

(3) Defendants shall pay nominal damages, which total in the amount of one (1) dollar to each Plaintiff.

                                      /s/ A. Richard Caputo
                                      A. Richard Caputo
                                      United States District Judge